The plaintiff has proved all the material allegations of his bill, notwithstanding the denial in the answer. According to the pleadings and the proofs, the facts are, that in 1848, the plaintiff contracted with one Carpenter for the purchase of a small tract of land at the price of $110, to be paid in five annual instalments of $22 each, for which he executed to Carpenter his notes, and took from Carpenter a bond for title, when the purchase-money was paid; thereupon, the plaintiff went into possession, and has lived on the land ever since. Before the last notes fell due, Carpenter, having determined to remove from the State, notified the plaintiff, who had made no payments towards the purchase-money, that he wished some arrangement made in regard to the land. The plaintiff had, at that time, made improvements on the land, in building, clearing, etc., of the value of $75, and oneSigment offered to take the land off his hands, pay Carpenter, and pay the plaintiff $75, in consideration of the improvements; but the plaintiff, having ascertained that the defendant, John Summit, was willing to befriend him by taking the title from Carpenter, and holding the land for him in the same way that Carpenter held it, and willing to save "his home," if he could, made an arrangement with the said John, by which he was to pay Carpenter the purchase-money, take up plaintiff's notes, take the title from Carpenter, and hold it as a security (514) for the purchase-money, and then in trust for plaintiff, when the purchase-money was paid. To enable him to procure the title from Carpenter, the plaintiff handed to him the bond of Carpenter for title. Carpenter agreed to take the notes of the defendant John, for the same amount, in place of the plaintiff's notes, which he handed over to him; and upon the defendant John surrendering to him his title bond, he executed to him a deed for the land. Plaintiff remained in possession of the land, and sometime afterwards, hearing that *Page 423 
the defendant John was about to execute a deed to his son Langford, the other defendant, for the land, he tendered to the defendant John, the amount which he had paid Carpenter, together with interest, to wit, $125, and requested him to execute a deed to him for the land; but the defendant refused, saying he had conveyed the land to his son.
This mean subterfuge, showing that the original purpose of the defendant John, was not to befriend his neighbor, but to trick him out of "his home," will not avail the defendants; for the defendant Langford is a volunteer, having paid nothing for the land, and holds it subject to the plaintiff's equity.
But the defendants rely upon the statute of frauds. Does this case fall within its operation? The statute requires all contracts to sell or convey
land, or any interest therein, to be in writing; so, the question is, do the facts declared, show a contract on the part of the defendant John, tosell or convey the land in controversy, to the plaintiff, within the meaning of the statute?
The plaintiff's equity does not rest upon the idea of the specificperformance of a contract. The parties did not occupy the relation of vendor and vendee. The defendant did not agree to sell the land to the plaintiff; for at the time of this arrangement, he did not have the land, or any interest therein, to sell; nor was the plaintiff to pay a price forit. But the plaintiff's equity rests upon the idea of enforcing theexecution of a trust; and the facts show that the relation of the parties was that of trustee and cestui que trust. By force of the contract with Carpenter, the plaintiff, in the view of this Court, was the (515) owner of the land. Carpenter held the legal title in trust to secure the payment of the purchase-money, and then in trust for the plaintiff. Had Carpenter sold the land to a third person, with notice, the purchaser would have been a trustee for the plaintiff. The substance of the arrangement between the parties was, that the defendant should be substituted in place of Carpenter, as a trustee for the plaintiff; and to carry this purpose into effect, the plaintiff puts the bond of Carpenter in the control of the defendant, without which special confidence he could not have acquired the title. It is evident the statute of frauds has no application.
This conclusion is supported by Hargrave v. King, 40 N.C. 430, where it is decided — "Where one, by parol, agrees to procure a lease for himself and others, and procures the lease in his own name, he is a trustee for those for whom he agreed to act, and the statute has no application."
Per curiam.
The plaintiff is entitled to a decree. *Page 424 
 Cited: Cousins v. Wall, 56 N.C. 45; Hanff v. Howard, 56 N.C. 445;Turner v. Eford, 58 N.C. 107; Shelton v. Shelton, 58 N.C. 294; Houston v.Houston, 62 N.C. 94; Blount v. Caroway, 67 N.C. 402; Sherrill v.Sherrill, 73 N.C. 14; Cobb v. Edwards, 117 N.C. 247; Sykes v. Boone,132 N.C. 203; Avery v. Stewart, 136 N.C. 442; Russell v. Wade, 146 N.C. 122;Jones v. Jones, 164 N.C. 325; Brogden v. Gibson, 165 N.C. 23; Rush v.McPherson, 176 N.C. 567; McNinch v. Trust Co., 183 N.C. 40; Bank v.Scott, 184 N.C. 315; Thompson v. Davis, 223 N.C. 794; Embler v. Embler,224 N.C. 816.
 *Page 11